[No. A030840. First Dist., Div. Four. Dec. 30, 1987.]

JOHN J. REGAN III, Plaintiff and Respondent, v.
RONALD LANET, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the introductory paragraph, sections I and IIA and the concurring opinion are certified for publication.

## Counsel

James F. Beiden and Richard E. Kennett for Defendant and Appellant.

Oy-Lene Chong for Plaintiff and Respondent.

## Opinion

**SABRAW, J.**—Defendant appeals from a judgment against him for rescission of a contract for the purchase of real property. He argues: (1) the trial court abused its discretion in denying his motion for discovery after arbitration; (2) the evidence does not support the remedy of rescission; (3) recovery is barred by laches; and (4) the award of damages was not supported by the evidence and was incorrectly calculated. We reject defendant's arguments and affirm the judgment.

### I. Facts and Procedure

Plaintiff owned some investment property in Modesto which he wanted to sell under a tax free exchange for another investment property. Internal Revenue Code section 1031 in pertinent part provides: "[N]o gain or loss shall be recognized on the exchange of property held for . . . investment . . . if such property is exchanged solely for property of like kind which is to be held . . . for investment." Plaintiff contacted defendant, a real estate broker, for assistance in finding an acceptable parcel for plaintiff to acquire in exchange concurrently with the sale of plaintiff's Modesto property. Unable to find a suitable exchange parcel, defendant suggested that plaintiff proceed to sell his Modesto property and accept temporarily in exchange a parcel of property defendant owned on Bradford Street in Hayward. The Bradford Street property was to be held by plaintiff while defendant continued to look for a suitable exchange parcel.

Presumably, under this scheme of things defendant would find a parcel of property acceptable to plaintiff which defendant would purchase and thereafter convey to plaintiff in exchange for and return of the Bradford Street property.

Purportedly to put this intended agreement into writing, the defendant prepared two standard form Real Estate Deposit Receipt Agreements which dealt only with the sale and repurchase of the Bradford Street

property between the parties and did not address the remainder of their agreement. Under the first deposit receipt dated December 23, 1982, defendant was to sell his Bradford Street property to plaintiff for $98,000, plaintiff was to pay a down payment of $28,780 evidenced by an assignment of a $19,000 note and deed of trust from the sale of the Modesto property and a credit of $9,780.00 for painting and landscaping on the Bradford Street property. The balance of the purchase price was to be paid through refinancing the Bradford Street property by obtaining a new $70,000 loan secured by a first deed of trust thereon. The painting and landscaping credit was apparently a fiction to facilitate qualifying for the tax advantage of the exchange by raising the price of the property to a figure high enough to not lose a gain deferral.

The second deposit receipt was executed the same day but was postdated to February 1983. Under its terms the defendant was to repurchase the Bradford Street property for $89,000; he was to make a down payment in the form of an assignment of the $19,000 note and deed of trust on the Modesto property and to take subject to a $70,000 deed of trust. The testimony at trial indicated that the down payment of the $19,000 note was intended to be simply a return of plaintiff's equity from the Modesto property which he was to use in the purchase of the more suitable exchange property to be eventually found by defendant.

The trial court found plaintiff and defendant had an oral agreement to split the expenses on the Bradford Street property. This is not stated in the deposit receipts, but defendant did admit he was to share in payment of the negative cash flow on the property.[1] He denied he was obligated to split any other expenses.

However, problems arose. Plaintiff's Modesto property did not immediately sell, and so escrow on that property did not close until sometime in February of 1983. Defendant was having no luck locating an exchange parcel. Disagreements also began over the payment of the negative cash flow and the expenses on the Bradford Street property. Defendant's payments toward the negative cash flow seemed to arrive late or not at all. Plaintiff was upset because he was paying upkeep expenses on the property including the installation of a new water heater.

As the expenses mounted and defendant failed to pay, plaintiff found he could no longer afford to keep the property. He claimed defendant pressured him to just accept the Bradford property outright, but he did not

---

[1] Negative cash flow amounted to $300 per month, which was the difference between the mortgage payment and the rental income on the house.

want to do this. Finally he contacted defendant and asked him to purchase back his property. Defendant agreed to return the $19,000 note but refused to reimburse plaintiff for any expenses. Plaintiff refused this arrangement and decided to have the property listed for sale with another broker.

Defendant wrote to the other broker stating he agreed to release the listing on the understanding that he was released from his agreement to repurchase the property from plaintiff. This was never put in writing and plaintiff denied agreeing to this condition. Defendant nevertheless thereafter pledged the $19,000 note from the Modesto property to another party. Therefore when plaintiff served a notice of rescission on August 16, 1982, defendant no longer had the note to return.

Plaintiff sued for rescission and restitution. The case was ordered to arbitration where plaintiff was awarded damages of $36,770. Defendant then requested a trial de novo. The trial judge also ruled for plaintiff awarding him $25,000. Defendant's motion to vacate the judgment and for a new trial was denied. This appeal follows.

## II. ANALYSIS

A. *Was it an Abuse of Discretion to Deny Defendant's Motion to Compel Discovery After Arbitration?*

Following court ordered arbitration defendant substituted new counsel who moved for an order to allow discovery before trial.[2] Virtually no discovery had been conducted by defendant's original counsel. The trial court denied the motion.[3] Defendant argues the failure to allow him to conduct any discovery was an abuse of discretion and prejudiced his right to a fair trial.

Under Code of Civil Procedure section 1141.24, "No discovery . . . is permissible after an arbitration award except by leave of court upon a showing of good cause." No court has directly addressed the meaning of "good cause" under this statute. The one case applying the statute, *McCormick* v. *Sentinel Life Ins. Co.* (1984) 153 Cal.App.3d 1030 [200 Cal.Rptr. 732], was able to skirt the issue. The court held, "McCormick argues good cause can be found in the complexities of the case as well as the fact important witnesses reside out of state and cannot be compelled to testify at trial. [¶] We agree with the trial court's grounds for denying the motion. If

---

[2] Defendant also made a motion at this time to continue the trial.

[3] The order states: "1. Defendant's motion for continuance of trial is denied; and [¶] 2. Defendant's motion to permit discovery after arbitration is denied without prejudice for renewal if the December 3, 1984 trial date should be continued."

the case is unduly complex now it was also complex prior to arbitration. Likewise, if important witnesses reside out of state they also resided out of state prior to arbitration. *Whatever the standard of good cause may be under section 1141.24 McCormick has not shown good cause for further discovery by arguing the case is complex or witnesses cannot be compelled to testify.*" (*McCormick, supra,* at pp. 1051-1052.) (Italics added.)

Defendant cites *Associated Brewers Distributing Co.* v. *Superior Court* (1967) 65 Cal.2d 583 [55 Cal.Rptr. 772, 422 P.2d 332] for the proposition that good cause can be shown through "relevance to the subject matter and materiality to the issues."

*Associated Brewers* dealt with the interpretation of Code of Civil Procedure section 2036. Section 2036 defines the showing of "good cause" in a different context—i.e., discovery motions made to compel production of documents. The main issue in that case was whether good cause included a showing that the documents sought would be admissible as evidence at the trial. The court concluded this showing was not necessary. (*Associated Brewers Distributing Co., supra,* at p. 587.)[4]

Plaintiff argues the showing of good cause should be analogous to that found in California Rules of Court, rule 333.[5] Rule 333 deals with late discovery, or in other words discovery motions made within the 30-day cutoff period before trial.

In deciding the meaning of good cause under section 1141.24, we look to the statutory scheme itself. Judicial arbitration is covered in part 3, title 3, chapter 2.5 of the Code of Civil Procedure beginning with section 1141.10. Although no specific guidance on good cause is given in Chapter 2.5, section 1141.14 provides, "Notwithstanding any other provision of law except the provisions of this chapter, the Judicial Council shall provide by rule for practice and procedure for all actions submitted to arbitration under this chapter."

Rules concerning judicial arbitration are found in title IV, division III of the California Rules of Court. Rule 1612 deals with discovery and provides, "The parties to the arbitration shall have the right to take depositions and

---

[4] At the time of this action section 2036 provided, "A party required to show 'good cause' to obtain discovery under any provisions of Chapter 2 (commencing with section 1985) or of Article 3 (commencing with section 2016) of Chapter 3 of this title shall show specific facts justifying discovery and that the matter is relevant to the subject matter of the action or reasonably calculated to lead to the discovery of admissible evidence." This section has been repealed effective July 1, 1987, and is not found in the new Discovery Act.

[5] Rule 333 is now found in Code of Civil Procedure section 2024.

to obtain discovery, and to that end may exercise all of the same rights, remedies, and procedures, and shall be subject to all of the same duties, liabilities, and obligations as provided in Part 4, Title 3, Chapter 3 of the Code of Civil Procedure, *except that all discovery shall be completed not later than 15 days prior to the date set for the arbitration hearing unless the court, upon a showing of good cause, makes an order, granting an extension of time within which discovery must be completed.*" (Italics added.) No further guidance on good cause is provided for in this section.

■■■ The chapter referred to in rule 1612 contains Code of Civil Procedure section 2036 discussed hereinabove and also incorporates the Rules of Court where rule 333 is found. The guidelines found in rule 333 appear most on point wherein the following considerations are cited which the judge may take into account when ruling on motions for late discovery: "the necessity and reasons for the discovery, the diligence or lack of diligence of the party seeking the discovery or order and the reasons for not having completed the discovery or had the motion heard earlier, whether permitting the discovery or granting the order will prevent the case from going to trial on the day set or otherwise interfere with the trial calendar or result in prejudice to any party, and any other matter relevant to the request."

We must conclude that rule 333 provides a number of considerations that afford an excellent starting point in weighing "good cause" for purposes of section 1141.24. ■■■ Armed with these guidelines, we turn now to the case at hand. We look first to the necessity and reasons for the discovery. Since no previous discovery had been completed, some necessity existed for it. The reasons for requesting postarbitration discovery were contained in a declaration by counsel attached to the motion. In it counsel states, "My client's former counsel has conducted virtually no discovery. No interrogatories were sent, and no depositions were taken. [¶] I cannot fully represent my client without conducting further discovery before trial. All attempts at arranging for stipulations for discovery have failed. Given my late entry into this matter and my client's jeopardy for lack of significant discovery, I believe this constitutes good cause for permitting discovery following arbitration. [¶] Specifically, I believe that it is essential to my client that I take the deposition of plaintiff and that plaintiff be required to produce all documents in his possession related to the transaction at issue in this case." But as was stated in *McCormick, supra,* 153 Cal.App.3d 1030, if reasons existed for deposing plaintiff and obtaining documents now they certainly existed before arbitration. We fail to see how these reasons establish good cause.

Also relevant is whether the party seeking the discovery has been diligent, and whether good reasons existed for not completing the discovery earlier. Here a considerable amount of time elapsed between the filing of

suit and the case being ordered to arbitration.[6] Defendant fails to cite any reason why former counsel failed to seek discovery when he had nearly two years in which to act. Present counsel waited a month after finding plaintiff would not consent to discovery before bringing a motion requesting it. No explanation is offered.

Next, would the granting of the request for discovery have delayed the trial of the action? Yes. Defendant filed a motion to continue the trial along with his request for discovery. If the motion for discovery had been granted, in all likelihood the trial would have been postponed. The motion was filed on November 1. Trial was set for December 3. The motion was not heard until November 16. Clearly the trial would not have been able to go forward as scheduled.[7]

■ In the arbitration context the court will need to consider other circumstances that might bear on the postarbitration discovery request. One such factor is the purpose behind arbitration, namely that it is a method for obtaining "prompt and equitable resolution" to disputes and is a way to "efficiently" resolve cases. (Code Civ. Proc., § 1141.10.) Another is whether the party seeking discovery is also the party who requested the trial de novo. Although this factor is somewhat nebulous, the point is that parties should not be able to take the arbitration hearing lightly, or for the purpose of "testing the waters" so to speak.

■ Finally, the court should consider any showing of prejudice or hardship that either party contends will flow from the granting or denial of postarbitration discovery. The burden of proof is on the party making the contention. Here defendant claimed he was prejudiced because he was unfamiliar with the evidence at trial and thus much confusion resulted regarding the presentation of evidence. While the evidence was presented in a rather disjointed manner, it does not appear that defendant was unfamiliar with it. The case centered around the real estate documents both plaintiff and defendant had signed, and of which both presumably had copies. The testimony at trial likewise revolved around these two parties. Thus, the prejudice to defendant appeared minimal. On the other hand, the granting of the postarbitration discovery motion would have further delayed resolution of the case for the plaintiff.

■ In summary, we have suggested the following considerations as a guide for trial courts in evaluating showings of good cause on requests for

---

[6] Plaintiff filed suit on September 23, 1982. Trial was originally set for December 19, 1983. However, it was ordered to arbitration on February 24, 1984. The arbitration hearing was on July 11, 1984.

[7] The judge's order (see fn. 3) clearly suggests he was concerned with the trial going forward. He denied the motion for discovery "without prejudice for renewal" if the trial date should be continued.

postarbitration discovery: (1) the necessity and reasons for the discovery; (2) the diligence of the party seeking discovery; (3) whether delay in the trial of the action will result; (4) whether the purposes of arbitration, namely prompt, equitable and efficient resolution of cases, is being served; (5) whether the party seeking discovery is also the party who requested trial de novo; and, (6) prejudice and hardship to both parties.

The burden was on defendant in the instant case to establish "good cause" and he failed to do so. We conclude therefore that the court did not abuse its discretion in finding "good cause" under section 1141.24 had not been established.

B.-E.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

We affirm the judgment.

Anderson, P. J., concurred.

**POCHÉ, J.,** Concurring.—I agree with my colleagues regarding the factors to be considered by the trial court in determining a request for discovery under Code of Civil Procedure section 1141.24 following judicial arbitration. However, I part company with them in applying those factors to this case.

(1) *The necessity and reasons for the discovery*: necessity is beyond question; the reasons stated are pretty good as well: absolutely no discovery had been conducted by former counsel.

(2) *The diligence of the party seeking discovery*: new counsel made the requisite motion within a month of learning that the opposing side would not cooperate. It is true that new counsel did not explain why former counsel had not conducted discovery, but can that truly be required of new counsel? (Cf. maj. opn., *ante,* p. 360.)

(3) *Whether delay in the trial will result*: it probably would. As I read this record, this is the only factor that moved the trial court to deny the request.[1] In and of itself, it cannot be supreme.

---

* See footnote, *ante,* page 353.
[1] The majority read the trial court's ruling the same way. (See maj. opn., *ante,* p. 360, fn. 7.)

(4) *Whether the purposes of arbitration are being served*: maybe the bandwagon will be slowed, but once again, efficiency—standing alone—cannot override due process which, presumably, is one of the ingredients of arbitration.

(5) *Whether the party requesting discovery is also the party who requested a trial de novo*: answer, yes. (But candidly, I am not sure I understand how this element factors into the equation.)

(6) *Whether the moving party has demonstrated that he will be prejudiced if the request is denied*: viewing the showing at the time of the motion—not at the point of the conclusion of trial as the majority does (cf. maj. opn., *ante,* p. 360)—one cannot conclude otherwise.

(7) *Whether the opposing party has demonstrated that it will suffer hardship from the granting of the motion*: absolutely no showing was made here. My colleagues suggest a theory of hardship not advanced below—the granting of the motion "would have further delayed resolution of the case for the plaintiff"[2] (maj. opn., *ante,* p. 360)—but even they do not explain what harm actually would have been caused by a delay.

Put bluntly, when new counsel comes into a case following judicial arbitration and immediately moves for discovery alleging that former counsel completed no discovery whatsoever prior to arbitration, and the opposing party makes no showing or even a peep regarding prejudice he will suffer from a postponement of trial, I think "good cause" for discovery within the meaning of section 1141.24 of the Code of Civil Procedure has been shown. However, because appellant has made no showing here that he suffered prejudice as a result of the erroneous denial of his motion for discovery, I am satisfied that the error did not result in a miscarriage of justice and does not warrant a reversal of the judgment. (Cal. Const., art. VI, § 13.)

---

[2] That, of course, is identical to factor three.